**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

|  |  |
|---|---|
| JASON HACKER ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | Docket No. 14-063-JWD-EWD |
| N. BURL CAIN, et al ) | |
| Defendants, ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S**
**MOTION IN LIMINE REGARDING IRRELEVANT TESTIMONY**

Plaintiff, through undersigned counsel, respectfully files this memorandum in support of his motion in limine.

Plaintiff Jason Hacker filed this action contending that Americans with Disabilities Act, Rehabilitation Act, and the Eighth Amendment were violated when Defendants delayed his doctor-recommended cataract surgery pursuant to a policy and practice of delaying elective surgery for things like cataracts and hernias. While waiting for two and one half years for surgery, Plaintiff's eyesight deteriorated to the point where he was declared legally blind. As a result, his routine life functions like reading, walking, playing music or working at various jobs were severely impaired. Due to Defendants failure to accommodate his disability, Plaintiff tore his chest muscle when he was sent out to work in Angola's fields and cut off one of his fingers when he was assigned to work in the prison's license tag plant.

The motion addresses eleven categories of irrelevant potential testimony that should be barred from trial in this case.

1

# DISCUSSION

A. **Evidence of Plaintiff's Conviction or Crimes Should Be Excluded From Evidence.**

Plaintiff Jason Hacker is and was, at all times relevant to this lawsuit, incarcerated at the Louisiana State Penitentiary at Angola on a felony conviction. He is serving a sentence of life without parole.

Federal Rule of Evidence 404(b) explicitly states that "evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b). Under this rule, evidence of prior convictions or other crimes is not admissible to show a defendant's bad character. *United States v. Griffin*, 324 F.3d 330, 359-360 (5th Cir. 2003). As noted in the Rule 404 Advisory Committee Notes:

> Character evidence is of slight probative value and may be very prejudicial. It tends to distract the trier of fact from the main question of what actually happened on the particular occasion. It subtly permits the trier of fact to reward the good man and to punish the bad man because of their respective characters despite what the evidence in the case shows actually happened.

Notes of Advisory Committee on Proposed Rules, Fed. R. Evid. 404 (citation omitted).

Although evidence of prior crimes may be admissible for "another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident," Fed. R. Evid. 404, none of these is at issue here. This is a civil case, not a criminal matter, and Plaintiff's prior crimes therefore have no bearing on the case. *Accord. Patrick v. Ridge*, 394 F.3d 311, 319-320 (5th Cir. 2004). The only effect that evidence of Plaintiff's prior crimes would have would be to prejudice the jury against Plaintiff and distract the jury from the true issues in this case.

Furthermore, although Rule 609 allows for the introduction of convictions for

crimes directly related to a witness' credibility, such evidence must survive a Rule 403 relevancy examination. Fed. R. Evid. 609(a). That is, the probative value of the felony conviction must substantially outweigh its prejudicial effect. Fed. R. Evid. 609(b) Evidence and testimony relating to Plaintiff's prior conviction should be barred because the potential for unfair prejudice far outweighs any possible probative value. Such evidence is of no relevance to the allegations of Plaintiff's complaint, nor did his conduct have any effect on the medical care that the Defendants should have provided.

Finally, evidence and testimony relating to Plaintiff's prior convictions and other crimes should be barred under Rule 403 because the possible probative value is far outweighed by the potential for unfair prejudice. Fed. R. Evid. 403. The fact that Plaintiff was convicted of a felony over fifteen years ago has no bearing on this case. The only reason that Defendants would seek to introduce evidence of Plaintiff's prior crimes would be to inflame the passions of the jury and create the potential situation where the jury renders a lesser verdict because of Plaintiff's prior conduct.

**B.      Evidence of Plaintiff's Prison Disciplinary Should Be Barred as Irrelevant**

This Court should exclude any evidence or testimony relating to Plaintiff's disciplinary record during his incarceration. Federal Rule of Evidence 402 provides that "[e]vidence which is not relevant is not admissible," and Rule 401 defines relevant evidence as having "any tendency to make a fact more or less probable than it would be without the evidence."

Evidence of an inmate's prior bad acts or other disciplinary history is generally not admissible in a civil hearing against prison officials for violating an inmate's civil rights. *See, e.g., Hynes v. Coughlin*, 79 F.3d 285, 295 (4th Cir. 1996) (reversing trial court's dismissal of plaintiff prisoner's civil rights claims, holding that it was error to

3

allow the introduction of plaintiff's prison disciplinary record because the evidence was used to show plaintiff's character, which is prohibited by the Federal Rules of Evidence); *Lataille v. Ponte*, 754 F.2d 33, 35 (1st Cir. 1985) (holding that plaintiff inmate's prior disciplinary record was prejudicial and stating "[i]t is well settled that prior acts may not be admitted to prove that a person acted in a similar fashion in the case at hand.").

The Court should not allow evidence of Plaintiff's prison disciplinary record because it is not relevant to the present civil action. *See* Fed. R. Evid. 402. The nature, or even existence, of Plaintiff's disciplinary infractions are entirely irrelevant to this lawsuit and will add no probative value to assessing the merit of his claims. Any evidence of a disciplinary record would serve no purpose other than to confuse the jury and prejudice the Plaintiff by suggesting Plaintiff's disciplinary record plays some role in the jury's determination as to whether the Plaintiff received adequate medical care. *See* Fed. R. Evid. 403.

**C. Any Testimony Regarding Plaintiff's Medical Care Other Than Cataract Surgery Should Be Barred as Irrelevant**

Defendants should be barred from referring to or soliciting testimony about medical care provided to Plaintiff other than surgery for Plaintiff's cataracts. Federal Rule of Evidence 402 provides in pertinent part "[e]vidence which is not relevant is not admissible." Here, medical care provided to Plaintiff other than surgery for cataracts is not relevant because it does not make any element of a claim or defense more or less probable than it would be without the evidence. F.R.E. 401(a).

As the U.S. Department of Justice explained in a previous lawsuit about unconstitutional medical care at Angola:

> Plaintiffs anticipate that defendants will suggest that the 'big file' theory should preclude a finding of unconstitutionality. Under the

4

> big file theory, defendants will argue that the inmates have seen health care providers multiple times and there is even a thick file to prove it. A thick big file does not end the inquiry. The issue still remains whether defendants ignored serious medical needs.

*Williams et al. v. Bruce Lynn et al.*, M.D. La. 92-cv-01, Sept. 9, 1994 Pretrial Order at 1.

This Court has agreed with the Department of Justice's legal conclusion. In its order denying summary judgment, this Court held that "even regular treatment, if known to be insufficient and ineffective for a diagnosed and serious ailment, will not be adequate to defeat Plaintiff's medical indifference claim." *Hacker v. Cain*, 14-cv-63, R. Doc. 170 at 34, *citing Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006); *see also Greeno v. Daley*, 414 F.3d 645, 653-54 (7th Cir. 2005) (in an "Eighth Amendment claim a prisoner is not required to show that [s]he was literally ignored").

For example, the number of times Plaintiff saw a doctor is irrelevant, if seeing a doctor did not actually result in effective treatment for his ailment. As this Court put it:

> [U]nder binding jurisprudence, categorically inadequate treatment for a verifiably and knowingly worsening condition does not earn constitutional immunity simply because it is regularly provided; monotony does not somehow excuse patent inadequacy.

*Hacker v. Cain*, 14-cv-63, R. Doc. 170 at 35. Thus, any testimony or argument along these lines should be excluded.

**D.    Any Post-Surgery Refusal of Care Should Be Barred as Irrelevant**

Defendants should be barred from referring to or soliciting testimony about any instance in which the Plaintiff refused medical care after he received cataract surgery on both his eyes. Federal Rule of Evidence 402 provides in pertinent part "[e]vidence which is not relevant is not admissible." Here, any refusal of medical care provided to Plaintiff after surgery is not relevant, because it does not make any element of a claim or defense more or less probable than it would be without the evidence. F.R.E. 401(a). If Plaintiff

5

declined to go to the doctor after his eyes were fixed after a several year delay, it does not justify Defendants' delay.

E.  **Any Argument that "Inmates Get Better Medical Care than Free People" Should Be Barred as Irrelevant**

Defendants should be barred from referring to, soliciting testimony about, or making an argument to the effect of "inmates get better medical care than free people." This kind of argument is irrelevant under F.R.E. 402. Defendants have a constitutional obligation to provide inmates with medical care (*Estelle v. Gamble*, 429 U.S. 97 (1976)) and a statutory obligation to provide that care consistent with the Americans with Disabilities Act and Rehabilitation Act. They have no such obligation towards free people, and so a comparison of the two is irrelevant and prejudicial.

F.  **Any Argument That Plaintiff Was Not "Actually" Blind Should Be Barred, as That Fact Has Already Been Determined**

Defendants should be barred from referring to, soliciting testimony about, or making an argument to the effect of Plaintiff not being actually blind, or that legal blindness is not real blindness. This court has already made a finding of fact that "Plaintiff's cataracts made him increasingly and eventually totally blind." *Hacker v. Cain*, 14-cv-63, R. Doc. 170 at 43; *see also* R. Doc. 148-12 at ¶ 18 ("On May 22, 2013, an Angola doctor noted that Jason Hacker's vision was 20/400 and that he had cataracts, and that he was 'legally blind.'")

G.  **Any Testimony By Director Singh as to Whether Plaintiff Needed Surgery Should be Barred, As He is Neither Qualified, Nor an Expert Witness, Nor Plaintiff's Treating Physician**

On May 6, 2016, Dr. Raman Singh, medical director of the Louisiana Department of Public Safety and Corrections, was deposed in this case. Ex. E (Dep. of Director Singh) at 5. Director Singh is responsible for developing and implementing the policies

and practices of the DPSC as it relates to the *administrative* tasks of scheduling surgeries. *Id.* at 30. He is not a treating physician of any inmate in the general sense, and he is not Plaintiff's treating physician. As a result, Director Singh has never treated Plaintiff.

Director Singh also does not possess the necessary qualifications to opine whether surgery is medically necessary. In his deposition, Director Singh repeatedly testified that he is not medically qualified to opine on whether surgery should be performed:

> I cannot do surgery. I do not have a surgical background. I cannot tell a surgeon to do surgery. The surgeon has to decide whether a patient needs the surgery, and once a surgeon decides, only then our job is to provide access to care and then bring patient to the surgeon to get the surgery done.

*Id.* at 29-30. *See also id.* at 30 ("We do not approve or deny surgery."); *id.* at 113 ("For a surgery, it has to be agreed upon by a surgeon."); *id.* ("I cannot tell a surgeon to operate. He has to come to his own conclusion that this patient needs surgery."); *id.* at 114 ("A recommendation has to come from a surgeon who has the training and expertise in that field."); *id.* at 150 ("I can't force a surgeon to do surgery."); *id.* at 194 ("[r]ecommendation for the surgery has to come from a surgeon who has training and expertise in that field."); *id.* at 241 (answering the question as to who decides whether surgery is needed, Dr. Singh responded "[i]n the case of hernia, it should be the surgeon."). Nor has Director Singh been identified by Defendants as an expert witness. For these reasons, any testimony by him as to Plaintiff's medical condition or need for surgery should be barred.

H.     **Evidence of Any Other Lawsuits by Plaintiff Should Be Barred As Irrelevant**

Plaintiff's filling of any prior or subsequent lawsuit is not relevant to any issue in this case. It is not relevant or material to this case, because it does not make it any more or less probable that Defendants acted failed to accommodate Plaintiff's disability or

7

acted with deliberate indifference to Plaintiff's need for surgery. *See* F.R.E. 401, 402. Accordingly, any evidence or testimony about Plaintiff's prior or subsequent lawsuits should be barred from introduction at trial.

Moreover, there has been no evidence adduced in discovery suggesting that Defendants treated Plaintiff's complaints of hernia pain in a particular way because he perceived Plaintiff to have a history of filing immaterial or petty grievances. Thus, whether Plaintiff previously filed an unrelated grievance is of absolutely no relevance to the allegations set forth in the Plaintiff's complaint. Any attempt to introduce such evidence by Defendants would be prejudicial and would serve to simply incite the passions of the jury to create the potential situation where the jury renders a lesser verdict because of Plaintiff's prior conduct.

Furthermore, any probative value that this evidence might have would be greatly outweighed by the prejudicial effect. Rule 403 states that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403. If such evidence were permitted, particularly relating to any prior lawsuits against the same Defendants, the result would be prejudicial to the Plaintiff and suggest that he is prone to filing lawsuits, or that that he has particular feelings against the Defendants, which led him to file multiple lawsuits. Any attempt to introduce such evidence by Defendants would be prejudicial and would serve simply to incite the passions of the jury and potentially create a potential situation in which the jury renders a lesser verdict because of Plaintiff's prior conduct.

I.      **This Court Should Bar Testimony or Arguments Contrary to Facts Deemed Admitted by this Court or Admitted in a Rule 30(b)(6) Deposition.**

This Court should prohibit the defendants from eliciting testimony or making arguments that are contrary to facts that were deemed admitted by this Court (*see* R. Doc. 116) or admitted via testimony in the Defendants' Rule 30(b)(6) depositions. (Rule 32(a)(2) provides, in relevant part, that the "deposition of . . . a person designated under Rule 30(b)(6) . . . to testify on behalf of a public or private corporation . . . which is a party may be used by an adverse party for any purpose." Fed. R. Civ. P. 32(a)(2).)

On August 27, 2015, this Court ruled that the Plaintiff's Requests for Admission Nos. 1 and 3-25 are deemed admitted for pursuant to Fed. R. Civ. P. 36(a)(6). R. Doc. 116, at 2-3. Plaintiff propounded 25 requests for admission on defendant, James LeBlanc, the Secretary of the Department of Corrections and Public Safety. R. Doc. 71-2, accompanied by two exhibits: (1) three pages of correspondence involving Jason Hacker, Warden LaMartiniere and the Angola Eye Clinic, R. Doc. 71-3, and (2) 79 pages of Jason Hacker's medical records. R. Doc. 71-4. Defendant submitted responses to the Requests. R. Doc. 71-5. This Court ruled that the admissions that the defendants refused to admit were deemed admitted. R. Doc. 116, at 2-3.

Plaintiff also conducted depositions in the Spring of 2015 pursuant to Rule 30(b)(6). In response to the topics listed in the Plaintiff's deposition notices, the defendants designated Dr. Randy Lavespere, Director Singh, Warden Richard Peabody, and Ms. Terri Cannon as their corporate representatives on various topics. Ex. K, Plaintiff's Rule 30(b)(6) Deposition Notice; Ex. L, Defendants' Designation of Rule 30(b)(6) Deponents Per Topics.

The requests as a whole were aimed at establishing the authenticity of documents related to plaintiff's eyesight problems as well as aimed at constituting each observation of poor eyesight, diagnosis of cataracts and recommendations for surgery as established facts. Finally, the requests asked the defendant about very straightforward and simple things like whether Angola and the State receive federal funding and the date of plaintiff's surgeries. The admissions related to authenticity, R. Doc. 71-2 (Nos.4, 5, 6, and 9), can be dealt with in the pretrial order. However, the remainder of the admissions, R. Doc. 71-2 (Nos.1, 3, 7-8, and 10-25), and any admissions made during the Rule 30(b)(6) depositions should be treated as established and proven fact at trial. (Many of those admissions are collated into Appendix A to this Memorandum).

Like requests for admission generally, their overriding purpose here is to reduce issues for trial and save the court's time by focusing the trial only on those matters in dispute. *In re Carney*, 258 F.3d 415, 419 (5th Cir. 2011); *Am. Auto. Ass'n Inc. v. AAA Legal Clinic of Jefferson Crooke, P.C.*, 930 F.2d 1117, 1121 (5th Cir. 1991); *Spikes v. Bolivar Cnty., Mississippi*, No. 2:07-CV-22-MPM-SAA, 2008 WL 2797014, at *3 (N.D. Miss. July 8, 2008). As Plaintiff has said throughout this case, it is important to remember that this case does not involve medical malpractice. Plaintiff's complaint is not with the doctors' diagnosis or their treatment recommendations. Indeed, several doctors who work inside Angola and at hospitals outside the prison diagnosed Mr. Hacker with cataracts and recommended cataract removal surgery. *See e.g.*, R. Doc. 170, at 33 & n.17. Instead, this case involves whether the institutions themselves are liable under federal law for the various complications derived from the more than two years that Mr. Hacker had to wait before he had his first cataract removal surgery. *See* R. Doc. 170, at 21, 38-39.

10

"Rule 36 admissions, whether express or by default, are conclusive as to the matters admitted." *Carney*, 258 F.3d at 420; *see also Am. Auto. Ass'n Inc.*, 930 F.2d at 1120. Regarding use at trial, "[a]dmissions obtained under the Federal Rules of Civil Procedure may be offered as evidence at trial, but are still subject to all pertinent objections to admissibility." *Simien v. Chem. Waste Mgmt., Inc.*, 30 F. Supp. 2d 939, 942 (W.D. La. 1998) (citing *Walsh v. McCain Foods, Ltd.*, 81 F.3d 722, 725 (7th Cir.1996)) *aff'd*, 174 F.3d 199 (5th Cir. 1999). Rule 36 admissions cannot be overcome at the summary judgment stage by contradictory affidavit testimony or other conflicting trial testimony. *See Am. Auto. Ass'n Inc.*, at 1119; *Dukes v. South Carolina Ins. Co.*, 770 F.2d 545, 548-49 (5th Cir.1985).

**J.     Rule 30(b)(6) Deponents Available at Trial Cannot Refuse to Testify to Matters Covered By Their 30(b)(6) Deposition**

Plaintiff conducted depositions in the Spring of 2015 pursuant to Rule 30(b)(6). In response to the topics listed in the Plaintiff's deposition notices, the defendants designated Dr. Randy Lavespere, Director Singh, Warden Richard Peabody and Ms. Terri Cannon as their corporate representatives of the Louisiana Department of Public Safety and Corrections on various topics. *See* Exs. K, L.

Should Plaintiff choose to call these witnesses at trial, the witnesses should be prepared to testify to the matters with which they were familiar as corporate representatives. Since it is not literally possible to take the deposition of a corporation, "the information sought must be obtained from natural persons who can speak for the corporation." *Brazos River Authority v. GE Ionics, Inc.*, 469 F. 3d 416, 433 (5th Cir. 2006); *Resolution Trust Corp. v. S. Union*, 985 F.2d 196, 197 (5th Cir.1993) ("When a corporation or association designates a person to testify on its behalf, the corporation

11

appears vicariously through that agent."). The Fifth Circuit squarely laid out this issue ten years ago:

> Although there is no rule requiring that the corporate designee testify "vicariously" at trial, as distinguished from at the rule 30(b)(6) deposition, if the corporation makes the witness available at trial he should not be able to refuse to testify to matters as to which he testified at the deposition on grounds that he had only corporate knowledge of the issues, not personal knowledge. This conclusion rests on the consideration that though Federal Rule of Civil Procedure 32(a)(2) "permits a party to introduce the deposition of an adversary as part of his substantive proof regardless of the adversary's availability to testify at trial," Coughlin v. Capitol Cement Co., 571 F.2d 290, 308 (5th Cir. 1978), district courts are reluctant to allow the reading into evidence of the rule 30(b)(6) deposition if the witness is available to testify at trial, and such exclusion is usually deemed harmless error. Thus, if a rule 30(b)(6) witness is made available at trial, he should be allowed to testify as to matters within corporate knowledge to which he testified in deposition.

*Brazos River Authority*, 469 F. 3d at 434 (footnotes omitted). Hence, should Dr. Randy Lavespere, Director Singh, Warden Richard Peabody or Ms. Terri Cannon be called as witnesses at trial, they should be prepared to testify to the topics for which they were designated to testify on behalf the La.DOC.

**K. The Testimony of Defendants' Expert Dr. Kastl Should be Excluded.**

On February 27, 2015, the Defendants disclosed the one-page expert report of Dr. Peter Kastl. Ex. M (Feb. 27, 2015 Email); Ex. N (Kastl Report); Ex. O (Invoice for Dr. Kastl).

The testimony of the Defendants' expert, Dr. Peter Kastl, should be excluded for the following reasons: he never evaluated the Plaintiff nor did he review Plaintiff's full medical record; he can only opine on an issue that is irrelevant to the issues in dispute in this case; and his testimony will not assist the trier of fact with understanding the complications that arise from delaying medically necessary surgery or the appropriate accommodations for a prisoner with an eyesight disability.

12

As Plaintiff has said throughout this case, this case does not involve medical malpractice. Plaintiff's complaint is not with the doctors' diagnoses or their treatment recommendations. Indeed, several doctors who work inside Angola and at hospitals outside the prison diagnosed Mr. Hacker with cataracts and recommended cataract removal surgery. *See e.g.*, R. Doc. 170, at 33 & n.17.

Rather, the case involves the difficulties faced by a legally blind prisoner in a maximum-security prison when it delays doctor recommended surgery pursuant to a policy that mandates that elective procedures – such as cataract removal surgery – a common, low-risk surgery to ameliorate a very serious medical problem – can be done at any time. R. Doc. 170, at 31-33; *Baker v. Wilkinson*, 635 F. Supp. 2d 514, 520-521 (W.D. La. 2009) (rejecting prison's argument that denial of necessary treatment due to classification of the surgery as elective surgery defeats Eighth Amendment claim). Consequently, Mr. Hacker waited more than two years for surgery, and over a year after he was declared legally blind. In the meantime, he was sent to work in the fields of Angola where he tore his chest muscle from the bone and to work in the license tag plan where he cut off part of his finger.

The essence of Mr. Hacker's ADA accommodation claim is that, despite knowledge of his declining eyesight and eventual blindness, the prison refused to accommodate his disability in ways that would allow him similar benefits that other full-sighted prisoners have in prison, *i.e.*, the ability to read like other inmates, the ability to access various parts of the prison (via walking stick or designated partner). Moreover, Plaintiff contends that the Defendants refused a reasonable accommodation by refusing to modify the elective surgery policy after he became legally blind.

Plaintiff has designated Edward Bell, Ph.D. as his expert to offer an opinion in this case relative to the full extent of plaintiff's ADA claims. Ex. JJ to R. Doc. 148. As with all reasonable accommodation ADA claims, Mr. Hacker's legal burden entails proof that the accommodation was necessary to enable him to participate in its services to the same extent as a non-disabled, full-sighted prisoner. *See Robertson v. Las Animas County Sheriff's Dept.*, 500 F. 3d 1185 (10th Cir. 2007). Dr. Bell's testimony will assist the trier of fact in understanding how certain accommodations are necessary to ameliorate the effects of blindness such that a blind prisoner is not prevented from participation to the same extent as fully sighted prisoners.

To this end, Dr. Bell will testify to the necessity of various accommodations in helping a newly blind prisoner function in a prison. In his report, he opines that, "[w]ith training or accommodations, persons who are blind can perform most work duties without difficulty"; that "[t]he prison could have provided Mr. Hacker with training and accommodations until surgery could have been received; that Mr. Hacker "could have benefited from a white cane for mobility and training on performing tasks nonvisually" which "would have increased his safety, reduced anxiety, and increased productivity." R. Doc. 150-3, at 6.

By contrast, Dr. Kastl will testify to matters that are not contested and do not inform the ADA issues in the case. For instance, his ultimate opinion is that "at no time was [Plaintiff] legally blind [that] while his visual acuities were decreased by his cataracts, he was still able to see [and] [a]ny delay in having cataract surgery did not result in any eye damages. Mr. Hacker now has perfect vision." Ex N. Again, it has never been an issue in this case that Plaintiff suffered permanent eye damage or that he did not receive surgery. Moreover, it is not a contested issue that cataract surgery was

14

unnecessary. Finally, Dr. Kastl does not opine on the difficulties posed by decreased visual acuity or legal blindness; factors at issue in terms of the need for an accommodation and its suitability for Mr. Hacker. Ex. N.

Dr. Kastl's opinion is not based on the full evidence in the case. For instance, he reviewed the records from University Hospital, where plaintiff had his cataract surgeries on each eye in July and September 2014. He did not review any of plaintiff's Angola medical records nor did he review medical records from other hospitals where Plaintiff was seen. *See* Exhibits A, B, C D, E, F, and H to R. Doc. 148, Plaintiff's Motion for Summary Judgment). As for the Angola records, this Court deemed admitted as fact that *inter alia* (1) plaintiff was declared legally blind on two occasions; and (2) that his vision was as bad as 20/400 on two other occasions. R. Doc. 116, at 2-3. Nevertheless, the Defendants' expert opines that "at no time was [Plaintiff] legally blind." Exhibit N.

The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which states that:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

A District Court must "ensure that any and all scientific testimony or evidence is not only relevant, but reliable." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993). "The district court's role is especially significant since the expert's opinion can be both powerful and quite misleading because of the difficulty in evaluating it. Indeed, no other kind of witness is free to opine about a complicated matter without

15

any firsthand knowledge of the facts in the case." *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004).

In forming an opinion for this case, Dr. Kastl did not evaluate Jason Hacker. Exs. N, O. He also did not review his medical history. For instance, it would seem rudimentary to review all the patient's medical records or to evaluate the patient in person, or both, in order to render a competent opinion about that patient.

Indeed, the 2000 amendments to Rule 702 explain that an expert witness must "appl[y] the principles and methods reliably to the facts of the case." Fed.R.Evid. 702(3); see also Fed.R.Evid. 702 advisory committee's note, 2000 amend. ("[A]ny step that renders the analysis unreliable ... renders the expert's testimony inadmissible.") (internal quotation marks omitted). By the words of his own report, Dr. Kastl's fails this test.

Indeed, no doctor can opine about a patient they have not seen nor evaluated. *See also McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 801 (6th Cir.2000) ("An expert's opinion, where based on assumed facts, must find some support for those assumptions in the record.") (quoting *United States v. L.E. Cooke Co.*, 991 F.2d 336, 342 (6th Cir.1993)) (internal citations omitted)); *Cooke*, 991 F.2d at 342 ("Where an expert's testimony amounts to 'mere guess or speculation,' the court should exclude his testimony, but where the opinion has a reasonable factual basis, it should not be excluded. Rather, it is up to opposing counsel to inquire into the expert's factual basis."). As such, this court should exclude his testimony. *See also Copley v. Smith & Nephew, Inc.*, 2000 WL 223404 (S.D. Tex.) (expert failed to obtain data on which he would rely in his own diagnostic protocol).

The requirement that an expert's testimony be reliable means that it must be "supported by appropriate validation — i.e., 'good grounds,' based on what is known."

16

*Daubert*, 509 U.S. at 590. The task for the district court in deciding whether an expert's opinion is reliable is not to determine whether it is correct, but rather to determine whether it rests upon a reliable foundation, as opposed to, say, unsupported speculation. *See* Fed. R. Evid. 702 (explaining that expert testimony must be based on "sufficient facts or data" and the "product of reliable principles and methods"); *Conwood Co., L.P. v. U.S. Tobacco Co.*, 290 F.3d 768, 792 (6th Cir.2002) (stating that the district court must determine whether proffered expert testimony "rests on a reliable foundation") (internal quotation and citation omitted). In this same vein, the opinions expressed in an expert report must be based on sufficient facts and date or else the expert will not be able to satisfy the requirement that the report be based on the expert's own valid reasoning and methodology. *See* Fed.R.Evid. 702.

Dr. Kastl's testimony should be excluded under Fed. R. Evid. 401. Rule 401 of the Federal Rules of Evidence says plainly that Evidence is relevant if it has any tendency to make a fact more or less probably than it would be without the evidence; and the fact is of consequence in determining the action.

Dr. Kastl's testimony about whether Mr. Hacker suffered eye damage is not an issue in this case. Similarly, there is no dispute that Mr. Hacker was entitled to surgery. The multiple doctors who recommended cataract surgery are a testament to this. Indeed, the facts related to the diagnoses and treatment recommendations are deemed admitted pursuant to Fed. R. Civ. P. 36(a)(6).

WHEREFORE, Plaintiff respectfully requests that this Court grant his Motion in Limine.

Respectfully submitted,

_/s/ Nicholas Trenticosta_____
NICHOLAS TRENTICOSTA
Louisiana Bar No. 18475
Herrero & Trenticosta
7100 St. Charles Avenue
New Orleans, LA 70118
Tel: (504) 864-0700
Fax: (504) 864-0780
Email: nicktr@bellsouth.net

_/s/ John Adcock_____
JOHN ADCOCK
Louisiana Bar No. 30372
P.O. Box 750621
New Orleans, LA 70175
T: (504) 233-3125
F: (504) 308-1266
Email: jnadcock@gmail.com

_/s/ William Most_____
WILLIAM MOST
Louisiana Bar No. 36914
637 Kerlerec Street
New Orleans, LA 70116
T: (504) 509-5023
Email: williammost@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on October 27, 2015, a copy of *Plaintiff's Memorandum in Support of Motion in Limine* was filed electronically with the Clerk of Court via the CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the court's electronic filing system.

_/s/ William Most_____
William Most